## COMPLETION OF A STATE ARMORY BY THE SURETY OF THE CONTRACTOR.

Common Pleas Court of Clermont County.

STATE OF OHIO v. THE CITIZENS TRUST & GUARANTY COMPANY OF WEST VIRGINIA ET AL.

Decided, October Term, 1913.

*Sovereignty of the State Waived in a Civil Proceeding, When— Mechanic's Lien Void as Against Property of the State—Rights of a Surety Who Completes Work Abandoned by a Contractor—Sections 5257, et seq.*

1. Where a state goes into court to ask·protection as to claims which are being asserted against its property, the immunity of a sovereign is voluntarily waived.

2. A mechanic's lien filed on property belonging to the state is void, and it follows that a proceeding does not lie to subject funds in the hands of the state to payment of claims for work and material which went into a state building under a contract which was abandoned before completion.

3. Where work on a state building is abandoned by the contractor and the contract is completed by his surety, the amount remaining due under the contract is payable to the surety, and can not be reached by creditors of the derelict contractors who hold claims incurred by him for work and material which went into the building.

*Pogue, Hoffheimer & Pogue* and *D. W. Murphy,* for the Citizens Trust & Guaranty Co.,
*Griffith & Nichols,* for Ferris.
*Eli H. Speidel,* for Keen & Bro.
*Chas. M. Leslie,* for Moores-Coney Company.
*W. F. Roudebush, Samuel Sprague, N. G. Cover* and *Louis Hicks,* for other liens.

DAVIS, J.

The armory board of state of Ohio, under Sections 5257, *et seq.*, contracted with J. H. L. Barr to build an armory at Batavia. Barr executed a bond in the sum of $9,000 conditioned for the faithful performance of the contract, the Citizens

Trust & Guaranty Company of West Virginia being the surety on the bond. On November 12th, 1912, Barr died, leaving the armory uncompleted. Barr's administrator declined to complete the contract, the state notified the bonding company and thereupon the company took charge and completed the armory. The contract price for the entire work was $17,860; there had been paid Barr $10,288, leaving in the hands of the armory board $7,572. The bonding company expended in completing the building $3,983.31, and at Barr's death there was due corporations, firms and individuals, for material, labor, etc., $6,677.08, this sum being due the defendants who have filed answers and cross-petitions in this case, and due for material, etc., furnished Barr and used in constructing the armory. There is no dispute as to the correctness, justice and amount of any claim. The contract provides for payment of 80% as the work progresses. A number of claimants filed proof of claim with armory board and filed mechanic's liens after Barr's death. When the building was completed, there being many claimants of the fund in the hands of the armory board, the Attorney-General commenced this action and bringing the fund into court makes all claimants parties, and asks the court to decide as to conflicting claims and distribute the fund. An examination of pleadings discloses the fact that in addition to the material and labor furnished by the bonding company, some of the other defendants also furnished material, which was furnished and used after Barr's death, as will appear by examination of account of Geo. A. Keen & Brother and Chas. Ferris.

It was insisted in argument by counsel for the bonding company that the state can not be sued, nor can any lien be acquired on the armory building, or on funds in hands of armory board.

It is so well settled by numerous decisions of the Supreme Court of the United States and of this state, that the state is sovereign and can not without its consent be sued, that it is unnecessary to cite cases on this point. Were this question in issue in this case, it would be disastrous to the bonding company and defeat not only all other creditors but the bonding company

as well. It would be a boomerang used by the company for it, as well as all other defendants, by cross-petition sue the state by laying claim to the fund. The bonding company can not urge a defense for the state, which the state does not claim. The right to plead immunity from suit, is a personal right, to be asserted, if at all, when the state is sued, by the state. ''The state is not bound by a general statute, but the exemption is a privilege of sovereignty and can be asserted only on behalf of sovereignty'' (56 O. S., 175). But in this case the state has commenced the action, has filed the petition, and it is held in *State* v. *Executor Buttles,* 3 O. S., 309, ''When the state appears in her courts as a suitor to enforce her rights of property, she comes shorn of her attributes of sovereignty as a body politic, capable of contracting, suing and holding property subject to those rules of justice and right which in her sovereign capacity she has prescribed for the government of her people.'' The 3d O. S., 309, has been approved in several cases, the last being *Railroad Co.* v. *State,* 85 O. S., 295. It is true that in this case the state is not trying ''to enforce her rights of property,'' but she is asking protection, and subjects herself to this suit, and voluntarily waives the immunity of a sovereign.''

The holding of court in *Ohio* v. *Morrow,* 10 N.P.(N.S.), 279, that the state can not be sued is true, but only in cases where a suit is brought against the state, and the state interposes the defense of sovereignty. Does it follow that, as the state can not without its consent be sued, no mechanic's lien can be taken on buildings erected by the state, or on the fund? This point is decided in *State, ex rel,* v. *Morrow et al,* 10 N.P.(N.S.), 279. That case was an action of mandamus, and counsel claim that was the only question necessary to be decided, and in fact the only point on which the case is any authority, but Judge Kyle after disposing of question of mandamus, says: ''There is a second question, more difficult of solution, and that is by the steps taken by the relator did it acquire any lien on the fund, or in other words, does the lien law apply in a case where the state of Ohio is party''? The opinion of Judge Kyle is a very clear one, and has been affirmed by the circuit court. On page

284 he says, ''There is no express provision or necessary implication that the state is included within the lien act, and therefore the mechanic's lien law does not apply to the state.'' The mechanic's lien law is a general statute and the state is not bound by a general statute (56 O. S., 175). The circuit court in affirming Judge Kyle, in 10 N.P.(N.S.), in a note on p. 279— cites a case in 38 Law Bulletin, 212, *Regg* v. *Mann,* a case affirmed by Supreme Court without report. In that case the facts found and stated, are:

''Mann entered into a contract with Hill to construct a dwelling; Regg, a sub-contractor, agreed to do the brick work; Mann was aware of this sub-contract. Hill, the principal, abandoned the job when the work was about half done; Regg, having nearly completed his sub-contract for brick work, was willing and prepared to go on and complete his sub-contract. There was due Regg, on his sub-contract, when Hill abandoned the job, $122. The owner, Mann, had paid Hill $1,375 on the contract, and had he completed the work there would have been due the additional sum of $1,233. Mann advertised for bids to complete the work, but he rejected all bids and personally completed the dwelling, and the whole cost, including amount paid principal contractor, was $109.84 less than original contract price. Regg, the sub-contractor, filed with the owner an itemized statement of his claim under mechanic's lien law. The circuit court as conclusion of the law found, (1) the contract was entire and Hill, the principal contractor, forfeited all his rights when he abandoned the contract; (2) that this abandonment worked a forfeiture against the plaintiff as sub-contractor, and that the mechanic's lien law could not afford plaintiff any remedy.''

It is urged that Sections 8324 and 8325, General Code, part of the mechanic's lien law, are broad enough to include either the state or the armory board, and this is true if the words ''or other public buildings provided for in a contract between the owner, or the board officer, or public authority'' would include an armory, and the clause authorizing sub-contractors to file with the owner, board officer or public authority, an itemized statement, would give a sub-contractor a right to a lien on the fund. The mechanic's lien sections of General Code, are general laws,

and from such laws the state is exempt (56 O. S., 175), and in *State, ex rel,* v. *Morrow,* 10 N.P.(N.S.), the statutes are quoted and said not to apply to the state. That case, as said, was affirmed by the circuit court, and so far as I can find has not been overruled, and that case decides that neither a lien on the building nor on the fund can be acquired under the lien law, and it would be singular that a lien on either the building or the fund could be taken when no action could be prosecuted against the state to enforce the lien. The amendments to the Constitution adopted in 1912, amend Article I, Section 16, of the Bill of Rights, and authorizes the Legislature to pass laws which will permit suits to be prosecuted against the state, but as yet no such law has been enacted, so that if a lien could be taken, no suit could be maintained to enforce it, unless the state waived its sovereignty, and if it be claimed that by entering this suit, the state waived sovereignty, and recognized a lien, then the case of *Regg* v. *Mann,* 38 L. B., 212, applies. "That this abandonment (by Barr) worked a forfeiture against the plaintiff as sub-contractor, and the mechanic's lien law could not afford a remedy." Opinions of the Attorney-General have been submitted in which he holds that no lien can be taken on buildings erected by the state, and counsel have submitted briefs, citing many cases, showing that such is the law in states where like statutes have been construed. The liens set out in the answers and cross-petitions in this case, being on the property of the state are void, and being void, no lien on the fund can be sustained by virtue of any proceeding authorized by lien laws whereby to subject funds in hands of state.

The question then remains: does the bond given by the bonding company, for the faithful performance of the contract of Barr, require the bonding company to complete the building at its own expense, and prevent it receiving any money out of the fund in hands of armory board, retained under the law, and the contract?

It is claimed that the statute authorizing building of an armory, Section 5253, *et seq.,* General Code, makes the bonding company liable to complete the building, and does not give the

company any right to the money unpaid and retained by the state. Section 5259 is the section relied on in support of this claim. It provides:

"After the bid is accepted the board shall cause a contract and bond to be prepared between its members, as representatives of the state of Ohio, and the contractor. Such contract and bond shall be prepared by the Attorney-General, and provide for the completion of the armory and the protection of the state for the pay of material and employees. It may provide for payment from time to time, in the manner therein specified, but in no case shall the advance payment exceed eighty per cent. of the bid. In case of default upon the contract, the board may sue on the bond and advertise for other bids for the completion of the work."

This being a bond prescribed by law and a contract made in pursuance to statute, the statute must read as a part of the contract (*Secrest et al* v. *Harbee et al*, 17 O. S., 430; *Sorg* v. *Pike*, 27 O. S., 506). The bond is for protection of the state, not for anyone else, and when the armory is completed, the contract is carried out and no cause of action can accure on the bond. The state has not bought or become liable for any marial entering onto the building, nor has the state paid or become liable to pay any employee on account of this building. When Barr died the work was nearly 80% completed. His administrator refused to complete the work, and had the bonding company declined, then the state, under law and by express provision of Article 5 of the contract, could provide labor and materials to finish the work and deduct the cost thereof from any money then due and thereafter to become due to Barr, or the state might have re-let the unfinished portion of the work, and if it had not sufficient funds remaining unpaid, it would have a right of action against the bonding company for any deficit. The bonding company, as to creditors of Barr, did not assume to pay his debts, and the fact that the debt was incurred for material that was used in the building did not, nor does it, make a bond simply that a contract shall be carried out liable for any debt of contractor. The state held a double security; it was required to retain at least 20% of the contract price un-

til completion of armory, and if this was not sufficient then, it held a bond. Stress is laid on Article 9 of the contract: ''If at any time there should be evidence of liens or claims, which, if established, the owner of said premises might become liable and which is chargeable to the contractor, the owner shall have a right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify him (in this case the state) against such liens or claims.'' As there can be no lien or claim on the fund against the state, this article would seem to be of little, if any, value or force. The law required the state to hold back 20%, and had Barr completed the contract and been in debt for labor or material, neither the state nor the bonding company would have been liable for such ,debts, and the 20% would.have been payable to Barr.

Article 9 of the contract authorizes the state to retain out of any payment due or to become due to Barr, an amount sufficient to indemnify the *state* against any lien or claim. There was no lien or claim against the state at the time of Barr's death; the administrator refusing to complete the contract, nothing further could be due or become due to Barr. How then, could any debt, lien or claim for past labor or material for Barr be paid out of money not due at his death, and never earned or due him or his estate? In the case of *Village of Pt. Clinton* v. *Cleveland Stone Company,* 10 C. C., 1, it is held:

''Where a contract for street improvement provided payments should be made the contractor as the work progresses, on estimates of city engineer, 85%, and 15%, to be paid on completion of the work, the contractor abandoned the contract and his sureties completed the contract in order to save themselves, the sureties are entitled to the 15% remaining unpaid as against the lienholders.''

The facts in the case show that the principal contractor abandoned his work; that up to the time no estimates had been made him; that it afterwards was estimated that he had performed $2,414.48 worth of work; the sureties completed the work, the village paid the sureties the 15%, and it seems that no one questioned the duty or right of the village to pay the

sureties the 15% for work done by them in completing the contract, but the dispute was whether in addition to the 15% the sureties could share in the money which was estimated to be due Sullivan at the time he abandoned the work. The circuit court refers to another case similar to the one under consideration, in which that court had before decided and held that the sureties were entitled to share to the extent of 15% in the fund in addition to what they had received for completing the work.

The circuit court of this first circuit, in case of *Peal & Bro.* v. *Board of Education*, 12 C. C., 266, an attachment and garnishee case, held:

"That when the sureties complete a job, which had been abandoned by the principal, the sureties are entitled to the monies coming due thereafter on the work, and no liens can attach thereto for a debt due from the principal contractor."

The authorities cited in brief of counsel for the bonding company are all to the effect that where a contractor abandons his work, the unearned portion of the fund applicable to the completed contract is to the extent that a surety has been compelled to expend money to complete the work, the money of the surety.

The bond in this case does not bind the sureties to do any thing except to see that Barr completes the contract. At Barr's death the contract was uncompleted and abandoned; nothing further could by any possible means become due to Barr. Had the state re-let the unfinished work, the 20%, and more if needed, would have been used, and the creditors could not have received any portion of it. It is difficult to see how the bonding company, as surety, by completing the work earned money for the creditors of Barr. Why as to this fund as to other creditors, does the bonding company occupy any other position than any other person.

"Sureties are never visited with penalties and their liability is never extended beyond the strict letter of the obligation into which they have entered." *State of Ohio* v. *Cutting*, 2 O. S., 1; *Smith* v. *Huseman*, 30 O. S., 662.

The answer and cross-petition of Keen & Bro., and Ferris, show that a small portion of the material set out in their respec-

tive bills was furnished after the death of Barr and used in the building. I am unable to determine from the pleadings whether any other of defendants furnished material used in the building after Barr's death.

The fund will be distributed as follows:

The claim of the bonding company to be paid in full and out of the amount due it, the costs of this action are to be taken.

To Keen & Brother, and Ferris, the amount shown to be due them for material furnished and used after November 12th, the date of the death of Barr; the balance of the fund is to be distributed *pro rata* among all claimants.